## STATE OF CONNECTICUT *v.* KENNETH GOULD (SC 18108)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Schaller, Js.

---

Argued September 16, 2008—officially released January 6, 2009

*Jeremy S. Donnelly*, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Roger Caridad*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Kenneth Gould, was convicted, after a jury trial, of possession of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] pos-

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

session of marijuana within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b), possession of drug paraphernalia in violation of General Statutes § 21a-267 (a) and operation of a drug factory in violation of General Statutes § 21a-277 (c).[2] The defendant appeals[3] from the judgment of conviction of § 21a-278 (b), claiming that: (1) this court's previous cases construing § 21a-278 (b) and General Statutes § 21a-269[4] to require the defendant to prove by a preponderance of the evidence that he was drug-dependent were wrongly decided; and (2) if those cases were decided correctly, the requirement that the defendant prove his drug dependency under §§ 21a-278 (b) and 21a-269 violates his due process right to have every element of the offense proved beyond a reasonable doubt. The defendant also challenges his conviction on all of the charges on the ground that the prosecutor engaged in impropriety during closing arguments. We reject all of the defendant's claims and affirm the judgment of conviction.

The jury reasonably could have found the following facts. In February, 2005, postal inspectors employed by the United States Postal Service became suspicious that a package addressed to the defendant's uncle, James Gould (Gould), at his apartment at 114 Pomfret Street in Putnam, contained narcotics. They shipped the pack-

[2] The defendant was charged, in a separate information, with attempt to possess marijuana in violation of General Statutes § 21a-279 (c), and was acquitted of that crime. That judgment is not at issue in this appeal.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

age to Thomas Lambert, a postal inspector in Wallingford, for investigation. Lambert obtained a federal search warrant, opened the package and found a large ball containing marijuana. Lambert then notified the statewide narcotics task force (task force) of his find and, together, they arranged a controlled delivery to Gould. Accompanied by a surveillance team of task force members, Lambert drove to Gould's residence and delivered the package. After Gould accepted the package, Lambert identified himself as a federal agent and the task force members entered the residence. Gould told the task force members that the package did not belong to him, but to the defendant. Gould stated that he had accepted a package for the defendant every two or three weeks and had notified him by telephone when the packages arrived. In exchange for this service, the defendant gave marijuana to Gould, which he used for pain relief.

The task force members asked Gould to call the defendant, as he usually did after receiving a package. He did so and, shortly thereafter, the defendant arrived at the apartment and took possession of the package. The task force members then arrested him. When they searched him, they found a cellular telephone and nearly $1000 in cash. They also searched the truck that he had driven to the residence and found several bags containing plant-like material, a small grinder, a scale and a partially burnt, hand rolled cigarette.

The day after the defendant's arrest, Lambert received a telephone call from the postmaster in Putnam, who advised him that another package addressed to Gould had arrived at the Putnam post office. Lambert applied for a search warrant, opened the package and found marijuana. Gould's apartment at 114 Pomfret Street in Putnam is 283 feet from a school known as the Putnam Science Academy.

Thereafter, the defendant was charged with multiple drug offenses. At trial, he testified that he never had sold any of the marijuana that he picked up at Gould's apartment, but had used it all himself. He further testified that he had smoked marijuana every day for thirteen years except for the twenty-nine days that he had spent in jail after his arrest in this case. He smokes several times a day, and smoking no longer gets him "high," but gets him to "normal." As a condition of probation, the defendant was required to receive treatment for marijuana dependency at a facility that he identified as "New Perceptions." He continued to use marijuana during treatment and obtained a "kit" that allowed him to pass the required urine tests. The defendant's father and uncle, Kenneth Gould, Sr., and William Gould, Sr., respectively, and the defendant's coworker and friend, Bernard Burgess, all testified that the defendant had used marijuana extensively.

The trial court instructed the jury that the defendant was required to prove that he was drug-dependent, as that term is defined in General Statutes § 21a-240 (18),[5] by a preponderance of the evidence. The defendant did not object or take exception to this instruction.

After the jury returned a verdict of guilty on the drug charges, as previously set forth in this opinion, the defendant filed a motion for judgment of acquittal on the ground that the jury could not reasonably have concluded that he had failed to establish that he was drug-dependent by a preponderance of the evidence. The trial court denied the motion.[6] The defendant then filed an amended motion for judgment of acquittal in which he argued that the requirement that the defendant

[5] General Statutes § 21a-240 (18) provides in relevant part: " 'Drug dependence' means a psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ."

[6] The defendant does not challenge this ruling on appeal.

prove his drug dependency by a preponderance of the evidence under § 21a-278 (b) violated his constitutional right to have every element of an offense proved beyond a reasonable doubt. The trial court also denied that motion. The trial court then rendered judgment in accordance with the jury verdict. This appeal followed.

I

We first address the defendant's claims that: (1) this court incorrectly held in *State* v. *Januszewski*, 182 Conn. 142, 166, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), and *State* v. *Hart*, 221 Conn. 595, 609, 605 A.2d 1366 (1992), that the defendant is required under §§ 21a-278 (b) and 21a-269 to prove by a preponderance of the evidence that he was drug-dependent at the time of the offenses; and (2) if those cases were decided correctly, the requirement that he prove his drug dependency violates his due process right to have every element of the offense proved beyond a reasonable doubt.[7] We considered and rejected identical claims in our decision in *State* v. *Ray*, 290 Conn. 24, 29–48, 961 A.2d 947 (2009), which was released on the same date as this opinion. We adopt the reasoning and result of that decision herein. Accordingly, we reject these claims.

II

We next address the defendant's claim that the prosecutor engaged in impropriety during closing arguments. The following additional facts are relevant to our resolution of this claim. During trial, Gould testified that he

[7] The defendant acknowledges that, because he did not object to the trial court's jury instruction on this issue, these claims were not preserved for review. He seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We review the defendant's statutory interpretation claim in the exercise of our supervisory power; see *State* v. *Ray*, 290 Conn. 24, 29 n.7, 961 A.2d 947 (2009); and review the defendant's constitutional claim under *Golding*. See id., 39.

usually held the packages only briefly before the defendant would come to his apartment to pick them up. On cross-examination, defense counsel asked Gould about one occasion when the defendant had gone to the Super Bowl in Florida. Gould said that he did not recall that occasion and that the defendant was always at home when the packages arrived.

During closing arguments, counsel for the defendant pointed out that the evidence showed that one or two packages had arrived at Gould's apartment while the defendant had been in Florida. He argued that this showed that Gould's testimony was "flimflam."

During rebuttal, the prosecutor made the following statements: "What we say is not evidence. Neither is it the law. We're allowed to discuss the law, but [what] we say is argument only. And any reasonable doubt must be based on evidence or lack of evidence and not the ingenuity of counsel.

"And speaking of counsel's ingenuity, he used a couple of times the words 'flimflam' in describing . . . Gould and describing his testimony. And one of the things that he's suggested that should cause you to pause is the fact that while he was receiving these shipments of marijuana, the defendant went to the Super Bowl and he suggested to you that that contradicts the testimony of . . . Gould because . . . Gould said, well, when I called him, he would show up within an hour. And that therefore . . . Gould must be lying.

"But did you notice that he never asked . . . Gould that question. He never said, gee, did there come a time when [the defendant] took a trip and perhaps you held a package for him for a day or two? Never asked that. Why not? He didn't want you to hear the answer."

The defendant did not object to the prosecutor's statements during trial. He now claims, however, that

the statements regarding defense counsel's failure to ask Gould whether he had ever held packages for the defendant for one day or more were improper because they implied that "[defense counsel] had not based his argument on fact or reason, but had intended to mislead the jury by means of an artfully deceptive argument." *State* v. *Orellana*, 89 Conn. App. 71, 103, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). In addition, he claims that the prosecutor's reference to "ingenuity of counsel" was improper under this court's decision in *State* v. *Delvalle*, 250 Conn. 466, 475, 736 A.2d 125 (1999), in which we directed the trial courts to refrain from using that language because "the phrase, taken in isolation, conceivably could misdirect the jury's attention . . . ." (Internal quotation marks omitted.)

We previously have recognized that a claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987). See *State* v. *Stevenson*, 269 Conn. 563, 573–75, 849 A.2d 626 (2004). "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . . To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total

of the improprieties." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 551–52, 949 A.2d 1092 (2008).

"The . . . determination of whether the defendant was deprived of his right to a fair trial . . . involve[s] the application of the factors set out by this court in *State* v. *Williams*, [supra, 204 Conn. 540]. As [the court] stated in that case: In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 33–34, 917 A.2d 978 (2007).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a

heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State v. Camacho*, 282 Conn. 328, 367–68, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007).

"[T]he determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial. . . . [T]he fact that defense counsel did not object to one or more incidents of [impropriety] must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." (Citation omitted; internal quotation marks omitted.) Id., 370.

We conclude in the present case that the prosecutor's statements referring to defense counsel's failure to ask Gould whether he ever had held packages for the defendant for more than one day were not improper. Although the statements verged on suggesting facts not in evidence, namely, that Gould would have admitted that he had held packages for more than one day if he had been asked that question directly, we conclude that they constituted a fair response to defense counsel's attempts to impeach Gould.

We reach a different conclusion with respect to the prosecutor's reference to "ingenuity of counsel." We previously have instructed trial courts, in the exercise of our supervisory power, to refrain from using that language when instructing the jury on reasonable doubt because of its potential to misdirect the attention of

the jury. See *State* v. *Delvalle*, supra, 250 Conn. 475. Moreover, as the prosecutor himself recognized, it is improper for counsel to instruct the jury on the law. See *State* v. *Gordon*, 104 Conn. App. 69, 75, 931 A.2d 939 ("only the court has the authority to instruct the jury on the law"), cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). Although counsel properly may refer to the law in commenting on the facts and inferences to be drawn from them; see id.; this case highlights the importance of doing so in a manner consistent with the trial court's instructions. Accordingly, we conclude that the prosecutor's reference to "ingenuity of counsel" was improper.

We also conclude, however, that this impropriety did not deprive the defendant of his right to a fair trial. The statement was isolated and was not directed at a critical issue in the case. Even if the jury had accepted defense counsel's argument that Gould deliberately had lied about the fact that packages had been delivered to his apartment while the defendant was out of town, that would not compel a conclusion that the packages did not belong to the defendant. Moreover, we repeatedly have concluded that the ingenuity of counsel language does not unconstitutionally dilute the state's burden of proof. See *State* v. *Delvalle*, supra, 250 Conn. 475 ("we consistently have rejected constitutional challenges to the 'ingenuity of counsel' instruction"). Finally, the defendant did not object to the comment at trial, thereby indicating that he did not see it as prejudicial. See *State* v. *Camacho*, supra, 282 Conn. 370. Accordingly, we reject this claim.

The judgment is affirmed.

In this opinion the other justices concurred.