# STATE OF CONNECTICUT *v.* BRYAN JORDAN
## (AC 29139)

Flynn, C. J., and Lavine and Hennessy, Js.

Argued May 27—officially released September 15, 2009

*Daniel J. Krisch,* special public defender, with whom was *Brendon P. Levesque,* special public defender, for the appellant (defendant).

*Melissa L. Streeto,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John M. Waddock,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Bryan Jordan, appeals from the judgment of conviction, following a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a) and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that (1) the state's improper comments during closing argument to the jury deprived him of a fair trial and (2) the trial court improperly precluded him from presenting evidence regarding the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The charges in this case stem from the shooting death of Curtis Hannons on September 19, 2005. On the day of the shooting, the defendant, the victim and the victim's brother got into an argument. After the argument was broken up, the defendant got into his car and left. A few minutes later, the defendant returned, and another "heated" discussion took place with the victim. Several people congregated near the two and tried to calm down the defendant and the victim. Three eyewitnesses gave slightly varying accounts of what happened next. All agreed that they heard a gunshot and that the

defendant then pulled out a gun and shot the victim once in the head. The defendant ran away, and the witnesses heard about six or seven more gunshots. The victim was transported to a hospital, where he died. The defendant was arrested in Georgia some time later.

The jury found the defendant not guilty of murder pursuant to General Statutes § 53a-54a (a), but guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of § 53a-55a (a) and carrying a pistol or revolver without a permit in violation of § 29-35. The court sentenced the defendant to a total effective term of forty-five years imprisonment. Additional facts will be set forth as necessary.

I

The defendant first claims that the state committed prosecutorial impropriety in its closing arguments to the jury. Specifically, he claims that the prosecutor improperly referred to facts that were not in evidence when arguing that the jury could infer intent to kill because it takes more effort to fire a revolver as compared to a semiautomatic weapon. The defendant also claims that the state's repetitive use of the rhetorical device, "doesn't it offend your common sense?" with regard to the evaluation of his credibility was improper. The state argues that the comment regarding the revolver was a fair inference from the evidence or, at most, a mistaken overstatement of the testimony. The state also argues that it is not improper for the state to ask the jury to use its common sense in evaluating credibility. Further, the state claims that even if there was prosecutorial impropriety, it did not deprive the defendant of a fair trial.

The governing legal principles on prosecutorial impropriety are well established. "[A] claim of prosecutorial impropriety, even in the absence of an objection,

has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987)." *State* v. *Gould*, 290 Conn. 70, 77, 961 A.2d 975 (2009). "Once prosecutorial impropriety has been alleged . . . it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and it is unnecessary for an appellate court to review the defendant's claim under *Golding*. . . . The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in . . . *Williams*." (Citation omitted; internal quotation marks omitted.) *State* v. *Pascal*, 109 Conn. App. 55, 66, 950 A.2d 566, cert. denied, 289 Conn. 917, 957 A.2d 880 (2008). "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Gould*, supra, 77.

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is]

fair and based [on] the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) Id., 78–79.

"It is not improper for a prosecutor to ask the jury to draw inferences and to exercise common sense. . . . A prosecutor may urge the jury to find for stated reasons that a witness was truthful or untruthful. . . . A prosecutor may also remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Citations omitted; internal quotation marks omitted.) *State* v. *Felix*, 111 Conn. App. 801, 811–12, 961 A.2d 458 (2008).

"If we conclude that prosecutorial impropriety has occurred, we then must determine, by applying the six factors enumerated in *State* v. *Williams*, supra, 204 Conn. 540, whether the entire trial was so infected with unfairness so as to deprive the defendant of his due process right to a fair trial. . . . These factors include the extent to which the impropriety was invited by defense conduct, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the effectiveness of the curative measures adopted and the strength of the state's case." *State* v. *Pascal*, supra, 109 Conn. App. 67. We address the alleged improprieties in turn.

A

The first impropriety claimed by the defendant was the prosecutor's imploring the jury to draw an inference

of intent from facts that were not in evidence. The state claims that the prosecutor drew a fair inference from the evidence but that at most it is a mistaken overstatement of the testimony and not an impropriety. We agree with the defendant that this statement rises to the level of an impropriety.

The challenged part of the state's rebuttal during closing argument was as follows: "Well, when you fire a revolver . . . it takes extra effort. It takes a little bit more conscious action on the part of the shooter. You have to cock the gun, pull the trigger; the semiautomatic, you just pull the trigger and it fires. I would suggest to you that that's important in terms of the issue of intent."

A review of the record reveals that the only testimony regarding the differences between a revolver and a semiautomatic weapon was from the state's firearms expert and was as follows: "[A] revolver is a handgun which uses [a] cylindrical, if you want to call it, magazine to hold the cartridges forward of the hammer but behind the barrel. The cartridges are loaded by hand into the cylinder, the cylinder is closed into the frame and then an independent pull of the trigger rotates the cartridge, aligns the cartridge to the barrel as the hammer goes forward [and] it fires the cartridge and it remains at rest. Until such time, you continue to fire. If there are no more cartridges to be fired, one removes the fired cartridges by opening the cylinder and then removing them manually from the frame of the firearm. A semiautomatic pistol uses a magazine which holds the cartridges, one on top of each other, which is usually placed in the handgrip portion of the firearm. The slide or the top of the frame of the firearm is pulled rearward exposing the cartridge on the top of the magazine; as the magazine is let go forward, it loads that cartridge into the barrel, which now starts that firing process. By pulling the trigger in a semiautomatic pistol, the

gasses which push the bullet through the barrel of the firearm also are used to push the slide rearward; in doing so, it ejects the cartridge from the end of the barrel and then it is thrown from the firearm during that firing process. As the slide goes forward, it picks up another cartridge and makes it ready to be fired by pulling another independent pull of the trigger."

It is a fair interpretation of the testimony of the state's firearms expert for the prosecutor to maintain during closing argument that loading and firing a revolver is different from a semiautomatic weapon. To take that evidence, however, and to assert that it takes "extra effort" and "more conscious action" to fire a revolver, which the state's firearms expert did not expressly testify to, and then to argue intent was improper. This language was more than just forceful argument or the prosecutor's zeal in the heat of argument. The comment amounts to unsworn testimony, which is not proper in closing argument. See *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002). This statement amounts to an impropriety.

## B

The defendant's next claimed impropriety is the prosecutor's repetitive use of the phrase, "doesn't it offend your common sense," when referring to the defendant's credibility. The state argues that it is not improper to ask the jury to use its common sense in evaluating the defendant's credibility. We conclude that the use of this rhetorical device went beyond asking the jury to use its common sense and, therefore, was improper.

Our review of the transcript of the prosecutor's rebuttal closing argument reveals that he used the phrase, "doesn't it offend your common sense," ten times within the span of eighteen pages of transcript. Additionally, he "suggested" three times that the jurors' "common sense can draw the reasonable inferences that need

to be drawn." This phraseology was used when the prosecutor was recounting the testimony of the defendant at trial. This occurred after the prosecutor had submitted to the jury that the case was "really about the credibility as to who[m] do you believe . . . ."

This language was more than the use of "proper rhetorical devices," as the state tries to characterize it. By using the device of the rhetorical question, "doesn't it offend your common sense," the prosecutor was, in effect, telling the jury that the defendant's testimony offends the prosecutor's common sense and that it should offend the jury's as well. By asking the question over and over in his summation, the prosecutor could lead the jury to believe that he was expressing his personal opinion about the defendant's testimony. We conclude that the challenged remarks fall close enough to the line to warrant our further review. See *State* v. *Dews*, 87 Conn. App. 63, 77, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

C

After concluding that the challenged portions of the state's rebuttal closing argument were improper, we now determine whether the prosecutorial impropriety deprived the defendant of his due process right to a fair trial. We conclude that it did not.

Under the well established analysis of *State* v. *Williams*, supra, 204 Conn. 540, we consider: (1) "the extent to which the [impropriety] was invited by defense conduct or argument"; (2) "the severity of the [impropriety]"; (3) "the frequency of the [impropriety]"; (4) "the centrality of the [impropriety] to the critical issues in the case"; (5) "the strength of the curative measures adopted"; and (6) "the strength of the state's case." "In determining whether the defendant was denied a fair trial [by virtue of prosecutorial impropriety] we must view the prosecutor's comments in the

context of the entire trial. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 442, 902 A.2d 636 (2006); see also, e.g., *State* v. *Thompson*, 266 Conn. 440, 460, 832 A.2d 626 (2003) (seminal case articulating standard). Finally, the state bears the burden of demonstrating beyond a reasonable doubt that there is no reasonable likelihood that the jury's verdict would have been different absent the improprieties at issue. See *State* v. *Stevenson*, 269 Conn. 563, 572–74, 849 A.2d 626 (2004).

Taking the *Williams* factors in order, there is nothing in the record to indicate that the defendant did anything to invite the impropriety. The second factor looks at the severity of the impropriety. In *State* v. *Thompson*, supra, 266 Conn. 479–80, our Supreme Court held that the impropriety was not severe when the prosecutor repeatedly attacked the veracity of the defendant's two principal witnesses, appealed to the emotions of the jurors by urging them to give the victim's family justice and urged the jury to use impeachment evidence substantively. See *State* v. *Dews*, supra, 87 Conn. App. 77–78. Using the standard set by the court in *Thompson*, we conclude that the prosecutor's conduct in this case was far less egregious and that the defendant has not met the severity prong. In addition, defense counsel failed to object during trial, and "[a] failure to object demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Gordon*, 104 Conn. App. 69, 82, 931 A.2d 939, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007).

The third prong measures the frequency of the instances of the impropriety. Here, the improprieties were scattered throughout the prosecution's rebuttal. This was not an instance of a few but, rather, thirteen instances of the improper rhetorical device referring the jury to see if its common sense was offended by the defendant's testimony in assessing credibility and one instance of referring the jury to facts that were not in evidence. These fourteen instances over a course of eighteen pages of transcripts were frequent.

The fourth prong relates to the centrality of the impropriety to the issues of the case. The reference to facts that were not in evidence concerned the defendant's intent to shoot the victim. "It is a well established principle that the elements of a crime are critical issues in a state's case." Id., 83. The rhetorical device related to the defendant's credibility, and the prosecutor asserted that the defendant's credibility would ultimately determine the case. The prosecutor's comments were directed squarely at the central issues of the charged offenses.

Fifth, we assess the strength of the curative measures adopted by the court. The defendant did not object to the prosecutor's statements or request any curative instructions, and the court did not give any. Although the court did not provide the jury with any curative instructions, in the general jury charge, the court instructed the jury on the basic guiding principle that "[c]ertain things are not evidence, and you may not consider them in deciding what the facts are. These include . . . arguments and statements by the lawyers. The lawyers are not witnesses. What they have said during the course of trial or in the closing arguments is intended to help you interpret the evidence, but it is not evidence." "In the absence of a showing that the jury failed or declined to follow the court's [general] instructions, we presume that it heeded them." (Internal

quotation marks omitted.) *State* v. *Gordon*, supra, 104 Conn. App. 83–84. There is no suggestion in the present case that the jury did not follow the court's general instructions.

The last factor we review is the strength of the state's case. There is no disagreement that the defendant fired his gun at the victim. There were also three eyewitnesses who testified that they heard a gunshot and that the defendant then shot at the victim. There also was testimony that before the shooting, the victim and the defendant had been in a heated discussion and that the defendant had driven away and then returned. Our Supreme Court has "never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." *State* v. *Thompson*, supra, 266 Conn. 483. There was sufficient testimony for the jury to conclude that the defendant was not acting in self-defense and to find him guilty of manslaughter in the first degree with a firearm. Despite the improprieties, the state's case was strong.

After our review of all of the *Williams* factors, we conclude that the defendant was not deprived of his right to a fair trial by the prosecutor's statements.

## II

The defendant's final claim is that the court improperly precluded him from presenting evidence that drugs were found in the victim's underwear. The state argues that the court appropriately precluded the testimony because it would have been cumulative of other evidence and more prejudicial than probative. We agree with the state.

As a preliminary matter, we set forth the applicable standard of review. "Section 4-1 of the Connecticut Code of Evidence provides that evidence is relevant if

it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Relevant evidence is excluded, however, if its probative value is outweighed by the danger of unfair prejudice . . . . Unfair prejudice exists when the evidence tends to have some adverse effect upon [the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence. . . .

"[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 277 Conn. 378, 387–88, 890 A.2d 559 (2006). "A determination regarding undue prejudice is a highly fact and context-specific inquiry." *State* v. *Burney*, 288 Conn. 548, 565, 954 A.2d 793 (2008). "[T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Rinaldi*, 220 Conn. 345, 355, 599 A.2d 1 (1991).

Over the state's objection, the court permitted the defendant to testify about his knowledge of the victim's involvement in drug dealing, ruling that it was relevant to the defendant's state of mind. The defendant then attempted to offer the testimony of a New Haven police officer who would have testified about four packages of cocaine found in the victim's underwear while he was under the care of paramedics after the shooting. The defendant claims that this evidence was relevant

to the reasonableness of his belief that the victim was a drug dealer, and therefore armed, to corroborate the defendant's testimony regarding the victim's involvement in illegal drugs and his assertion that drugs found at the crime scene were not the defendant's. The court ruled that the potential prejudicial impact of this testimony outweighed any probative value.

The defendant was permitted to testify that the victim was armed with handguns a majority of the time and that the victim had admitted to him that he had participated in a fatal shooting. He also testified that he had seen the victim beat up the mother of his children on several occasions. The court did not abuse its discretion in precluding the testimony because it was cumulative and highly prejudicial.

The judgment is affirmed.

In this opinion FLYNN, C. J., concurred.

LAVINE, J., concurring. I agree that the trial court's judgment should be affirmed. I write separately because I do not agree that any prosecutorial improprieties occurred in closing argument.[1]

The majority concludes that the prosecutor improperly referred to facts that were not in evidence when he argued to the jury that it could infer intent to kill because it takes more effort to fire a revolver as opposed to a semiautomatic weapon. In light of the expert testimony concerning the differences between a revolver and a semiautomatic weapon, referenced in the majority's opinion, I see nothing at all wrong with this argument. The prosecutor simply was asking the jury to draw a reasonable, common sense inference from the evidence. The jury was free to draw the requested inference, or not, as it saw fit. See *State* v. *Palangio*, 115 Conn. App. 355, 366, 973 A.2d 110 (2009)

---

[1] I agree with the facts as stated by the majority.

("[t]he jury members may draw from the evidence only such inferences as are reasonable, but they are not required to put aside their common sense").

I also disagree with the majority's conclusion that the state's repetitive use of the phrase, "doesn't it offend your common sense," was improper. This garden variety argument employs a common rhetorical device. It is the *repeated* use of the phrase that leads the majority to conclude that the prosecutor improperly expressed a personal opinion. If, however, using the phrase once is not improper—and the majority cites no case standing for that proposition—how can the repeated use of the phrase be considered improper? To reach the conclusion it reaches, the majority must condemn even the single use of the phrase, "doesn't it offend your common sense." This the majority opinion does not do.

Because I conclude that the prosecutor's closing argument was not improper, I respectfully concur.