STATE OF CONNECTICUT *v.* MICHAEL P. MILLER
(AC 29672)

Bishop, Alvord and Foti, Js.

Submitted on briefs November 17, 2009—officially released March 30, 2010

*Katharine S. Goodbody*, special public defender, filed a brief for the appellant (defendant).

*Michael Dearington*, state's attorney, *Mitchell S. Brody*, senior assistant state's attorney, and *Devant Joiner*, deputy assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

FOTI, J. The defendant, Michael P. Miller, appeals from the judgments of conviction, rendered following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1) and two counts of operating a motor vehicle with a suspended license in violation of General Statutes § 14-215 (a).[1] On appeal, the defendant claims that the trial court improperly admitted into evidence two redacted versions of suspension notices issued by the department of motor vehicles (department) that informed him that his operator's license was suspended and also failed to redact portions of those suspension notices that indicated the length of the respective suspensions. The defendant also contends that prosecutorial impropriety deprived him of a fair trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On July 3, 2006, Officer Sean Anderson of the

[1] The defendant was charged with one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs and one count of operating a motor vehicle with a suspended license under docket number MV-06-0034604-S. He was subsequently charged with one count of operating a motor vehicle with a suspended license under docket number MV-06-0034531-S. On May 22, 2007, the prosecutor filed a corrected amended information bearing both docket numbers, charging the defendant with the two counts from docket number MV-06-0034604-S as counts one and two and with the one count from docket number MV-06-0034531-S as count three. On May 22, 2007, the prosecutor also filed a three count amended part B information bearing both docket numbers and charging the defendant as a previous offender. The defendant raises no claims on this appeal with respect to that amended part B information, which was tried to the court.

North Branford police department was on duty and patrolling the town in his police cruiser. At approximately 8:30 p.m., as he drove along Maltby Lane and approached Line Street, Anderson observed the defendant driving his Dodge Ram pickup truck on the wrong side of Line Street. Anderson turned onto Line Street and proceeded to follow the defendant's vehicle. He observed the vehicle swerve back and forth and activated the cruiser's overhead emergency lights in order to stop the vehicle. Prior to exiting his cruiser, Anderson radioed his dispatcher, who, based on the registration number of the vehicle, informed him that the vehicle was registered to the defendant. Anderson approached the vehicle and requested that the defendant give him his operator's license and the vehicle registration. He observed that the defendant had slurred speech and watery eyes and was "fumbling" through papers, unable to locate the vehicle's registration or his insurance card. Anderson also smelled the strong odor of alcohol emanating from the defendant's breath. He then asked the defendant to exit his vehicle. As the defendant exited the vehicle, Anderson observed that he was unsteady on his feet. The defendant used the truck door, as he exited the vehicle, and the bed of the truck, as he made his way to the back of the vehicle, to maintain his balance and to keep from falling over. Anderson determined that he would conduct field sobriety tests on the defendant in order to establish whether the defendant was impaired by alcohol.[2] While Anderson was explaining the horizontal gaze nystagmus test, the defendant, although he was located on a level, paved road, could not stand without Anderson's assistance. Anderson then determined that because of the level of the defendant's intoxication, it was unsafe to conduct any field sobriety test, placed him under arrest and

[2] The three field sobriety tests are the horizontal gaze nystagmus, the walk and turn and the one leg stand.

charged him with operating a motor vehicle while under the influence of intoxicating liquor or drugs.[3]

After transporting the defendant to the North Branford police station, Anderson and his colleague, Officer James Lovelace, processed and booked him. Anderson advised the defendant of his *Miranda* rights,[4] as well as the implied consent advisory concerning a Breathalyzer test, which involves a chemical analysis of a person's breath,[5] and afforded him an opportunity to contact an attorney. The defendant declined to contact an attorney and refused to take the Breathalyzer test. Anderson informed the defendant that his refusal to take the Breathalyzer test would result in the revocation of his operator's license for twenty-four hours and its suspension for at least six months. During the booking procedure, Anderson received information from the department indicating that the defendant's driver's license was suspended at the time of the traffic stop that night. Anderson charged the defendant with one count of operating a motor vehicle with a suspended license; see footnote 1 of this opinion; gave him a date for a court appearance and released him from custody.

The next morning, on July 4, 2006 at approximately 9:25 a.m., Lovelace was on duty and patrolling the town in his police cruiser. He saw the defendant in the passenger seat of a vehicle in the vicinity of and heading toward the tow truck company that had towed the defendant's pickup truck the night before. Lovelace radioed the police dispatcher and requested the license plate number of the defendant's pickup truck that he had been

---

[3] Anderson also called a tow truck to remove the defendant's vehicle from the vicinity.

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] Pursuant to General Statutes § 14-227b (a), "[a]ny person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . ."

driving the night before at the time of the traffic stop. Lovelace then observed the vehicle in which the defendant had been a passenger going in the opposite direction and without the defendant inside. He soon thereafter saw the defendant's pickup truck exit the tow truck company parking lot. Lovelace then initiated a traffic stop and subsequently identified the driver as the defendant, whom he recognized from the previous night at the police station. He issued the defendant a summons for operating a motor vehicle with a suspended license; see footnote 1 of this opinion; and released him.

Following a jury trial, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a and two counts of operating a motor vehicle with a suspended license in violation of § 14-215 (a). Thereafter, in a trial to the court on a part B information, the trial judge found the defendant guilty of one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both as a third time offender, in violation of § 14-227a and two counts of operating a motor vehicle with a suspended license, where the suspension was on account of a violation of § 14-227a, in violation of § 14-215 (c). The defendant was sentenced to a term of five years incarceration, execution suspended after two and one-half years, fourteen months of which was mandatory, and five years probation. This appeal followed.

I

We first address the defendant's evidentiary claim. On appeal, the defendant claims that the court improperly admitted into evidence two redacted versions of suspension notices issued by the department that informed him that his operator's license was suspended and failed

to redact portions of those suspension notices that indicated the length of their respective suspensions. We disagree.

Preliminarily, we note that "[o]ur standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Breen* v. *Synthes-Stratec, Inc.*, 108 Conn. App. 105, 122, 947 A.2d 383 (2008).

The following additional facts provide the necessary backdrop for our resolution of these claims. On May 24, 2007, prior to the taking of evidence, the state indicated that it would seek to admit into evidence, through the testimony of Joanna Bisaupski, a department employee, redacted versions of two suspension notices issued by the department to the defendant.[6] After defense counsel stated that she wanted an "opportunity to review those documents with [the defendant] as they pertain to his license suspension and the notice received," the state agreed to call Bisaupski last in its case-in-chief. Later in the trial, prior to Bisaupski's taking the witness stand, the defendant objected to the admission into evidence of both suspension notices. Defense counsel stated that the basis for the objection was "the fact that [the suspension notices are] redacted,

---

[6] Attached to each suspension notice was a certificate of bulk mailing, indicating that each notice was sent via bulk certified mail. "If a letter is sent by 'bulk mail certified' a record exists of only the fact that it was mailed by the sender and not of its receipt by the recipient, since the recipient's signature is not required. United States Postal Service Domestic Mail Manual, Issue 43, Item 931.1." *Yanni* v. *DelPonte*, 31 Conn. App. 350, 356, 624 A.2d 1175 (1993).

and the method [by which they are redacted] suggests that the reason for the suspension is alcohol or drug related." Counsel argued that "any reasonable person would infer from the blacked out [portion] that the suspension notice [was] alcohol related, and . . . that would be unduly prejudicial for [the defendant]." During the discussion with the court that ensued, defense counsel further claimed that "the duration of the suspensions [which is not redacted] suggest an alcohol related suspension" and contended that evidence concerning the suspension notices, the information contained therein and the fact that they were sent to the defendant should "be presented in just oral form [because] there is no need for the documents to be admitted."

The court, after reviewing the documents, overruled the objection, stating that because the reasons for the suspensions were redacted, the defendant's argument that the suspension notices were more prejudicial than probative was mere speculation and was not founded in the evidence before the court or in the law. The court indicated that it would, if requested, "give a limiting instruction that [jury members] are not to speculate as to reasons for suspensions [and that] all that is being alleged here [by the state with the suspension notices] is that the defendant was under suspension."

The defendant claims on appeal that the suspension notices were improperly admitted into evidence because their probative value was outweighed by their prejudicial impact on the defendant. Specifically, the defendant argues that the prejudicial impact of the notices outweighed their probative value because the redactions of the reasons for the suspensions[7] and the

---

[7] We note that each suspension notice had visible after redaction the word "reason" followed by a blacked out line of text. Before redaction, both of those lines of text referred to a "conviction of operating [a motor vehicle] under the influence of alcohol, drugs or both" as the reason for the suspensions.

respective lengths of the suspensions, which were not redacted, in combination, "were likely to have caused the jurors to believe that the defendant had [been convicted of] prior alcohol related offenses." The defendant also seems to argue that the fact that the durations of the suspensions were not redacted on the notices, in and of itself, heightened the prejudicial impact of this evidence. This is so, he contends, because the increase from one year to three years in duration of suspension suggests "serious bases for the suspensions which was highly likely to be interpreted by the jury as alcohol related." "A determination regarding undue prejudice is a highly fact and context-specific inquiry. . . . [T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 117 Conn. App. 160, 171, 978 A.2d 150, cert. denied, 294 Conn. 904, 982 A.2d 648 (2009).

On the basis of our review of the record, we cannot conclude that the court abused its discretion in admitting the suspension notices into evidence. That the notices were relevant is manifestly clear. In order to convict the defendant of the charges of operating a motor vehicle with a suspended license, the state had to prove beyond a reasonable doubt that his license was suspended on July 3 and July 4, 2006, the dates of the violations. See General Statutes § 14-215 (a); see also *State* v. *Swain*, 245 Conn. 442, 462–63, 718 A.2d 1 (1998). The defendant has offered no compelling bases for this court to conclude that the notices were unduly prejudicial because of the redacted "reasons" for his license suspensions or because of the visibility of the duration of the suspensions. The court's determination

that the defendant's contentions were rooted in speculation and not based on the evidence before it or in the law is supported in the record. Moreover, the court, in its charge to the jury, gave a limiting instruction.[8] "Our Supreme Court has consistently held that an instruction limiting the jury's consideration to the specific purpose for which [evidence] was admitted . . . is the most important method for reducing the prejudicial impact the evidence may have. See, e.g., *State* v. *Jones*, 205 Conn. 638, 663–64, 534 A.2d 1199 (1987); *State* v. *Brown*, 199 Conn. 47, [57–58], 505 A.2d 1225 (1986); *State* v. *Howard*, 187 Conn. 681, 688, 447 A.2d 1167 (1982)." *State* v. *Curley*, 25 Conn. App. 318, 328, 595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991). Therefore, even if the admission of this evidence prejudicially impacted the defendant because it may have caused the jury to believe that he was a "chronic drunk driver," that impact was lessened, if not eliminated, by this limiting instruction. See *State* v. *Lemay*, 105 Conn. App. 486, 493, 938 A.2d 611 ("[i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them" [internal quotation marks omitted]), cert. denied, 286 Conn. 915, 945 A.2d 978 (2008). This claim, therefore, fails.

## II

Next, the defendant claims that prosecutorial impropriety deprived him of a fair trial. Specifically, he argues

[8] The court gave the following limiting instruction during its jury charge: "Now, in this case some evidence has been received for a limited purpose, and you must consider that evidence only for the purpose for which it was admitted and no other purpose. Now, state's exhibits four and five, which were the suspension notices stapled with the bulk mailing certificate that [Bisaupski] testified as to, those were admitted for the purpose of proving that the defendant's motor vehicle license was suspended on July 3, and July 4, 2006, and that the defendant had been notified of the suspension by bulk mailing. Those are the only reasons that you may consider this evidence, whether or not the elements of operation while under suspension have been proven beyond a reasonable doubt."

that the state impermissibly bolstered Anderson's testimony by improperly referring to evidence that was not in the record during its closing argument and thus depriving the defendant of a fair trial. We disagree.

Although the defendant did not object at trial to any of the state's comments that he now claims improperly referred to evidence that was not in the record, "a claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987). . . . In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Ovechka*, 118 Conn. App. 733, 743–44, 984 A.2d 796, cert. denied, 295 Conn. 905, 989 A.2d 120 (2010). "Because the claimed prosecutorial [improprieties] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) Id., 744. "If we conclude that prosecutorial impropriety has occurred, we then must determine, by applying the six factors enumerated in *State*

v. *Williams*, [supra, 540], whether the entire trial was so infected with unfairness so as to deprive the defendant of his due process right to a fair trial. . . . These factors include the extent to which the impropriety was invited by defense conduct, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the effectiveness of the curative measures adopted and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Jordan*, supra, 117 Conn. App. 164. "[T]he touchstone of due process analysis in cases of alleged[ly] [harmful] prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's [actions at trial] so infected [it] with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial . . . we must view the prosecutor's [actions] in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Melendez*, 291 Conn. 693, 714–15, 970 A.2d 64 (2009).

By stipulation, the state admitted into evidence the A-44[9] form Anderson had completed during the booking procedure on the night of the defendant's arrest for operating a motor vehicle under the influence. Anderson had checked boxes on the form indicating that the defendant had "refused to perform" both the horizontal gaze nystagmus and the walk and turn test. During direct examination, Anderson testified that he did not conduct any sobriety tests because he had determined that the defendant was too intoxicated to perform them safely. During cross-examination, defense counsel questioned Anderson as to why he had checked the boxes

___

[9] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." (Internal quotation marks omitted.) *State* v. *Bereis*, 117 Conn. App. 360, 368 n.7, 978 A.2d 1122 (2009).

indicating that the defendant had refused to perform the tests in light of his testimony that he did not conduct the tests. Anderson responded that he was trained to check that box if a person was unable to perform. During her closing argument, defense counsel drew attention to the discrepancy between the A-44 form and Anderson's testimony.[10] The state, in its rebuttal argument responded by stating: "A lot of attention is going to the A-44 form and the refusal to perform box. You are going to have [the A-44] with you when you go into the deliberation room, and I ask you to look at the boxes that are [on it], and I ask you to look—is there anything, is there any place in there that says [that the] defendant [is] unable to perform because of his safety? You won't see a box marked like that. You will see a refusal to perform box, and that is the only one [available]. This [form] is not a North Branford form; this is a . . . Connecticut standardized form that was voted

---

[10] In her closing argument, defense counsel stated, in relevant part: "The judge will instruct you that if you find that a witness has been inaccurate in one respect, remember it in judging the rest of the person's testimony and give it the weight that it deserves. I want to talk to you about that instruction in the context of . . . Anderson's testimony. . . . Anderson testified that for [the defendant's] safety, he was unable to perform the horizontal gaze nystagmus test. Yet, in his report he checked the box [on the A-44] that said [the defendant] refused to perform. That is not accurate. Inability to perform is vastly different than a refusal to perform. . . . Anderson also testified that for [the defendant's] safety, he was unable to perform the walk-turn test. Yet in his report, again, he checked that [the defendant] refused to perform; again, not accurate. The judge will instruct you that in deciding whether or not to believe a witness, you may take into account whether the witness' testimony was contradicted by what the witness has said or done at another time. . . . Anderson wants you to believe that there was no room, no room to write in unable on his report. You have got to be kidding me. There is no room [on the A-44], there is no back, there is no side, there is no second sheet; suddenly, North Branford police have run out of paper? He claims that he couldn't fit it onto the [A-44], so instead he settled for an inaccuracy. It is a misrepresentation. It is a lie. . . . If this characterization of [the defendant's] behavior is so careless and so inaccurate in this context, in this all important [A-44], that his commanding officer and the prosecution rely on in deciding whether or not to prosecute this case, how can we rely on the rest of his testimony?"

on by the legislature, and they decided what was going to be in this form, not the town of North Branford and not . . . Anderson." It is this last sentence that the defendant claims amounts to prosecutorial impropriety that deprived him of his due process right to a fair trial.

On the basis of our review of the record, we conclude that the statement at issue did, in fact, rise to the level of an impropriety. Nowhere is there any evidence referring to, let alone supporting, the notion that our General Assembly voted on and determined the contents of the A-44 report form.[11] As a result, the comment amounts to unsworn testimony, which is not proper in closing argument. See *State* v. *Jordan*, supra, 117 Conn. App. 166. This statement amounts to an impropriety.

Our conclusion that this statement was improper does not, of course, put an end to the inquiry. We still must determine whether this impropriety was egregious enough to deprive the defendant of his constitutional right to a fair trial, and, therefore, we next review it in the context of the whole trial using the aforementioned factors set out in *State* v. *Williams*, supra, 204 Conn. 540. As for the first factor, we find no evidence in the record to indicate that the improper remarks were invited by defense counsel. Defense counsel was entitled to call the jury's attention to the inconsistencies in Anderson's testimony concerning the reason for his

---

[11] The A-44 report form itself states that it was issued by the department under General Statutes § 14-227b. Section 14-227b (c) mandates that, after an individual arrested for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both either fails or refuses to submit to chemical analysis of his blood, breath or urine, the arresting officer must, inter alia, "prepare a written report of the incident and shall mail the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. . . ." Section 14-227b (c) goes on to state that "[t]he report shall be made on a *form approved by the Commissioner of Motor Vehicles* and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. . . ." (Emphasis added.)

not performing the sobriety tests and the way in which he filled out the A-44 form. Moreover, nothing stated by defense counsel in her closing argument suggests that she was arguing that Anderson or North Branford was responsible for the content of the A-44 form, generally, but merely the content of the form used in processing the defendant.

We next proceed to the second *Williams* factor, the severity of the misconduct, and the high bar set for this factor by our Supreme Court in *State* v. *Thompson*, 266 Conn. 440, 479–80, 832 A.2d 626 (2003).[12] In the present case, the prosecutor, by once stating that our legislature decided on the contents of the A-44 form, did not engage in repeated *Thompson* like patterns of bitter invective. See *State* v. *Hayward*, 116 Conn. App. 511, 520, 976 A.2d 791, cert. denied, 293 Conn. 934, 981 A.2d 1077 (2009). By the *Thompson* standard, which constrains our review, we conclude that the prosecutor's conduct was far less egregious than that in *Thompson* and that the defendant has not satisfied the severity prong. See id.

---

[12] "In *Thompson*, a murder prosecution, our Supreme Court reviewed and found improper the prosecutor's repeatedly calling the defendant a 'killer'. . . . calling the testimony of the defendant's two principal witnesses 'reprehensible,' saying that they were 'lying' and lacked both 'moral fortitude' and 'conscience,' lived in a 'twisted world,' were not 'stand-up enough guy[s]' and let misguided loyalty to a friend influence their testimony, and that by doing so, they had 'reserved a place in hell for themselves' . . . and they were truthful in their earlier, recanted pretrial statements and that to believe their trial testimony, jurors had to believe that the state's witnesses had lied, and suggesting to the jury that the witnesses would be arrested in connection with the homicide. . . . Our Supreme Court in *Thompson* also concluded that the prosecutor improperly importuned the jury to give the victim's family justice by convicting the defendant . . . and, finally, that he improperly urged the jury to use impeachment evidence against a third defense witness substantively. . . . Nonetheless, our Supreme Court held that this misconduct 'was not, for the most part, severe.' " (Citations omitted.) *State* v. *Dews*, 87 Conn. App. 63, 77–78, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

The third prong measures the frequency of the instances of the impropriety. Here, the impropriety was but one phrase found in the state's rebuttal argument. This one instance in the course of the state's rebuttal was not frequent. Cf. *State* v. *Jordan*, supra, 117 Conn. App. 169 (finding fourteen instances of impropriety over course of eighteen pages of transcripts frequent).

The fourth prong relates to the centrality of the impropriety to the issues of the case. The reference to facts that were not in evidence concerned the source of the content of the A-44 form itself and not the manner in which it was filled out by Anderson. The defendant's contention that the state somehow bolstered Anderson's testimony by suggesting that the content of the A-44 form itself was attributable to the legislature misses the mark. The central issue was not which governmental entity was responsible for the content of the A-44 but whether the defendant was operating a motor vehicle, on a public highway, while under the influence of intoxicating liquor or drugs. See *State* v. *Bereis*, 117 Conn. App. 360, 365, 978 A.2d 1122 (2009).

Fifth, we assess the strength of the curative measures adopted by the court. The defendant did not object to the prosecutor's statements or request any curative instructions, and the court did not give any. Although the court did not provide the jury with any curative instructions, in the general jury charge, the court instructed the jury on the basic guiding principle that "[c]ertain things are not evidence, and you may not consider them in deciding what the facts are. These include, first, the arguments and statements by the lawyers. The lawyers are not witnesses, what they have said during closing arguments is intended to help you interpret the evidence but it is not evidence." "In the absence of a showing that the jury failed or declined to follow the court's [general] instructions, we presume

that it heeded them." (Internal quotation marks omitted.) *State* v. *Gordon*, 104 Conn. App. 69, 83–84, 931 A.2d 939, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). There is no suggestion in the present case that the jury did not follow the court's general instructions.

The last factor we review is the strength of the state's case. Our Supreme Court has "never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Jordan*, supra, 117 Conn. App. 170. There was testimony that just prior to Anderson's initiating the traffic stop, the defendant was driving on the wrong side of the road and that his truck was weaving about the roadway. When Anderson approached the truck, he observed that the defendant's speech was slurred, his eyes were watery and he exuded a strong odor of alcohol on his breath. The defendant also was unable to stand and had to use his truck or have Anderson's assistance to stay on his feet. The defendant fell asleep in the cruiser during the short drive to the police station and needed physical assistance to exit the vehicle and to enter the station where he refused to submit to a Breathalyzer test. See *State* v. *Morelli*, 293 Conn. 147, 150, 976 A.2d 678 (2009) (defendant's refusal to take Breathalyzer test raised statutory inference of guilt). There was sufficient testimony for the jury to conclude that the defendant was guilty of operating a motor vehicle while intoxicated. Despite the impropriety, the state's case was strong.

On the basis of the foregoing, we cannot conclude that there is a reasonable likelihood that the state's comment deprived the defendant of a fair trial. As a result, the defendant's claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.