STATE OF CONNECTICUT *v.* TROY GORDON
(AC 27217)

Bishop, Lavine and Peters, Js.

Argued April 19—officially released October 2, 2007

*Joseph Visone*, special public defender, for the appellant (defendant).

*Joseph T. Corradino*, senior assistant state's attorney, with whom were *Adam E. Mattei*, special deputy assistant state's attorney, and, on the brief, *Jonathan C. Benedict*, state's attorney, and *John C. Smriga*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Troy Gordon, appeals from the judgment of conviction, following a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (3), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a) and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a).[1] On appeal, the defendant claims that prosecutorial impropriety[2] in closing argument deprived him of the constitutional right to a fair trial. Specifically, the defendant claims that the prosecutor usurped the function of the trial court to instruct the jury on the law by (1) diluting the state's burden to prove its case beyond a reasonable doubt, (2) mischaracterizing the definition of criminal negligence by likening it to a "bad accident" and (3) telling the jurors that "sometimes circumstantial evidence does not involve a witness' credibility . . . ." Although we agree with the defendant that the prosecutor's remarks regarding criminal negligence were improper, we conclude that they did not, under the totality of the circumstances, so infect the proceedings with unfairness as to deprive the defendant of a fair trial. We therefore affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the daytime hours of July 21, 2004, the defendant entered Baron's Cafe, a bar located on Barnum Avenue in Bridgeport. The defendant was a regular

---

[1] The jury found the defendant not guilty of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a) and assault in the first degree in violation of General Statutes § 53a-59 (a) (5).

[2] Subsequent to oral argument in this court, our Supreme Court rendered its decision in *State* v. *Fauci*, 282 Conn. 23, 917 A.2d 978 (2007), in which it concluded that the term "prosecutorial impropriety" is more appropriate than the traditional term "prosecutorial misconduct." Id., 26 n.2. Although the parties briefed and argued the defendant's claim utilizing the nomenclature of prosecutorial misconduct, we have used the term "prosecutorial impropriety" in our analysis of the defendant's claim.

patron of the bar and was known to its employees. The defendant asked Cynthia Lanham, an employee, whether surveillance cameras in the bar and parking lot were operational. Lanham replied that she did not know and directed him to another patron. The defendant left the bar but later returned with two unidentified males and began playing pool. The defendant was playing pool with the two men when, after some time, James Colvin, the bar's proprietor, advised them that if they were not purchasing drinks they would have to leave after they finished their game. When the men began to play another game, Colvin ordered them to leave. The defendant left the bar, returned a short while later and confronted Colvin concerning his pool table policy. He produced a handgun with a barrel shorter than twelve inches and opened fire inside the bar. After doing so, the defendant exited the bar onto Barnum Avenue. The victim, Kevin Lanham, who is the son of Cynthia Lanham, also left the bar with his cousin after the initial gunfire. Upon leaving the bar, the victim saw the defendant seated near the defendant's residence across the street. The defendant crossed the street and began walking on Barnum Avenue away from the bar. The victim, concerned for his mother's safety, asked the defendant what had happened. The defendant replied with an expletive that the victim should go back inside the bar. He then fired at least three gunshots, one of which struck the victim. As a result of the gunshot wound, the victim required two surgeries and had nineteen screws and a metal plate placed in his arm. Following the shooting, the defendant returned to his residence, and the police were summoned. Before the police arrived, the defendant left his residence after Cynthia Lanham exclaimed that he "shot my son." Later that evening at the residence of the defendant's sister, the defendant told his wife, Kim Buster, that he had fired the handgun because Colvin had spat in his face at the bar.

At trial, Colvin, Cynthia Lanham, the victim and the victim's cousin identified the defendant as the individual who had fired the handgun. All four witnesses knew the defendant, referring to him by his nicknames, "Boo" or "Boobie." Moreover, Cynthia Lanham and the victim were both neighbors of the defendant. Buster testified that she had heard the gunshots and had seen the defendant with the handgun. The state introduced four spent .38 caliber bullets that were recovered at the scene. The evidence indicated that the defendant possessed neither a state nor a municipal permit to a carry a pistol or revolver.[3] Additional facts will be set forth as necessary.

At the outset, we note that the defendant did not object to the alleged instances of prosecutorial impropriety during trial. This failure to object, however, does not preclude our review. In cases of unpreserved claims of prosecutorial [impropriety] it is unnecessary for the defendant to seek to prevail under the specific requirements of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)] and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.) *State* v. *Spencer*, 275 Conn. 171, 178, 881 A.2d 209 (2005).

We are guided by several well established legal principles in our resolution of the defendant's claims. "In analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Powell*, 93 Conn. App. 592, 603–604, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006).

---

[3] We note that the defendant does not challenge the sufficiency of this evidence to convict him as charged.

"Only if we conclude that prosecutorial [impropriety] has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial." *State* v. *Schiavo*, 93 Conn. App. 290, 302, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006).

When prosecutorial impropriety is identified, our Supreme Court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), has enumerated six factors to guide in the determination of whether the entire trial was so infected with unfairness as to deprive the defendant of a fair trial. These factors include whether "(1) the impropriety was invited by the defense, (2) the impropriety was severe, (3) the impropriety was frequent, (4) the impropriety was central to a critical issue in the case, (5) the impropriety was cured or ameliorated by a specific jury charge, and (6) the state's case against the defendant was weak . . . ." *State* v. *Fauci*, 282 Conn. 23, 51, 917 A.2d 978 (2007).

In addition, our Supreme Court has acknowledged that prosecutorial impropriety of a constitutional magnitude can occur in the course of closing arguments. "In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 367, 924 A.2d 99 (2007). "While a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Consequently, the state must avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from [its] duty to decide the case

on the evidence." (Internal quotation marks omitted.) *State* v. *Galarza*, 97 Conn. App. 444, 473, 906 A.2d 685, cert. denied, 280 Conn. 936, 909 A.2d 962 (2006). With these legal principles in mind, we now turn to the merits of the defendant's claims.

I

## PROSECUTORIAL IMPROPRIETY

As stated previously, the defendant claims that he was denied his due process right to a fair trial because the prosecutor engaged in impropriety when he instructed the jury on the law in three separate instances during closing argument. Although we agree with the defendant that only the court has the authority to instruct the jury on the law; *State* v. *Anderson*, 86 Conn. App. 854, 856, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005); we recognize that in commenting on facts in evidence and the inferences to be drawn from them, it is common practice for counsel to refer to the law. See, e.g., *State* v. *Rogelstad*, 73 Conn. App. 17, 32–33, 806 A.2d 1089 (2002). We now examine each of the challenged remarks in turn to determine whether they were improper.

A

First, the defendant claims that the prosecutor engaged in impropriety by diluting the state's burden to prove its case beyond a reasonable doubt. Specifically, the defendant argues that the prosecutor misled and confused the jury regarding the state's burden of proof when the prosecutor stated that (1) he does not have "to prove the case beyond a reasonable doubt" and (2) any evidence that does not support an element of the crimes charged is not significant. We conclude that in the context of the entire argument, these remarks did not amount to prosecutorial impropriety and that the jury was not misled.

"[W]e must consider the arguments of counsel in the context of the entire trial. A sentence here and a sentence there taken out of context may appear to be misleading or without the benefit of facts in evidence." (Internal quotation marks omitted.) *State* v. *D'Haity*, 99 Conn. App. 375, 386, 914 A.2d 570, cert. denied, 282 Conn. 912, 924 A.2d 137 (2007). We therefore review the comments in the context within which they were made. The prosecutor began his closing argument as follows: "All right. Now, as the court said, the state goes first; that acknowledges that we have the burden of proof, and that gives me the opportunity to respond after [defense counsel] is concluded. So, I'll basically give you a fairly limited approach at this point.

"I want to talk about the burden of proof just briefly. I'm not going to define it for you, the proof beyond a reasonable doubt. The court will do that thoroughly in a minute." He then made the following remarks, which the defendant challenges on appeal. "[S]ometimes when we talk about these things, it's said that the state has the burden to prove the case beyond a reasonable doubt, and because we like to be very precise in how we word things . . . I want to take issue with that. I do not have the . . . the burden to prove the case beyond a reasonable doubt. I don't have the ability to do that, and I don't have . . . the opportunity to. I have the requirement to prove each and every essential element of the crime charged beyond a reasonable doubt, and the distinction that I'm drawing there is that when you're talking about something that happened a year ago, there are things that the court deems relevant and some things that aren't relevant. So, you will inevitably as a jury come away with questions. What was this person doing? What happened with this? What about that? That may or may not be significant in your deliberation. You have to ask yourself the question when you go there and you face these inevitable questions—hey,

we didn't hear something. Ask yourself whether or not that is—relates to one of the essential elements of the crime charged and, if it does, it could be no problem. It may be the basis for a reasonable doubt. If it does not relate to one of the essential elements, it's insignificant and not something that you should speculate about or be concerned about."

The prosecutor concluded his explanation, stating, "I'm not going to give you an instruction on the law; that's up to the court. But I want to talk about the law just so that you know what—what we're claiming relates to the essential elements and what they are."

It is well established that "[t]he state [has] to prove every element of the crimes charged beyond a reasonable doubt, not every detail of the state's theory of the case. Although some evidence may be inconsistent with the state's theory of the case, the jury is not bound to credit only that evidence to the exclusion of evidence consistent with the state's theory." (Internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 285, 780 A.2d 53 (2001), overruled in part on other grounds by *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Youngs*, 97 Conn. App. 348, 353, 904

A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006).

"As a general rule, we do not dissect every sentence of the prosecutor's argument to discover impropriety. . . . We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial." (Citation omitted; internal quotation marks omitted.) *State v. Orellana*, 89 Conn. App. 71, 106, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

Here, the thrust of the prosecutor's remarks was to explain to the jury that the state's duty was only to prove each of the essential elements of the crimes charged. The statement that he does not have "to prove the case beyond a reasonable doubt," although having a tendency to mislead when viewed in isolation, is an accurate statement of law if construed to mean that the state does not have the burden to prove every fact supporting its case. The statement that "[any evidence that] does not relate to one of the essential elements [of the crimes charged is] insignificant," although troublesome, also must be viewed in context. These imprecise statements were not made in isolation, but rather were incorporated within the prosecutor's greater discussion of reasonable doubt. When viewed in this context, the challenged statements were not likely to confuse or mislead the jury.[4] We conclude, therefore, that they do not rise to the level of prosecutorial impropriety.

### B

The defendant next claims that the prosecutor diluted the state's burden of proof when, in discussing the assault in the first degree allegation and the lesser

---

[4] We note that defense counsel conceded at oral argument before this court that there is no evidence in the record that the jury was confused regarding the state's burden of proof.

included offense of assault in the third degree, he urged the jury to liken the definition of criminal negligence to a "bad accident . . . ." The state in its brief argues that this characterization, although simplistic, is not an unfair means of contrasting the mental state required for the lesser included offense with the intent to inflict physical injury required by the greater charge.[5] We agree with the defendant that this remark was improper.

The prosecutor began his discussion of assault in the third degree as follows: "There are four counts, four charges. You as a jury are going to have the possibility of considering another, and that's because the law says that sometimes there are lesser charges that are included in . . . a basic charge and that under certain circumstances you have the opportunity to consider, and that's just the way the law works. When you consider the assault in the first degree, if you think that . . . the evidence does not prove that the defendant intended to cause a physical injury . . . only then, if you get to the point where you don't say, no, we as a jury do not believe that there's sufficient evidence for us to conclude beyond a reasonable doubt that the defendant intended to cause physical injury to this person, then you would be able to consider a lesser charge on the issue of that assault count, which . . . is called . . . criminally negligent assault . . . ."

He then made the following remarks, which the defendant claims were improper. "[N]ow, the court will be more articulate about that . . . . It goes from assault in the third and, if you believe that no, he didn't really intend to cause a physical injury, at least was his conduct criminally negligent? So, it's just sort of like a bad accident . . . and if you believe that . . . and you believe he had a—he [caused] that with a gun, a firearm,

---

[5] At oral argument before this court, the state acknowledged that the characterization was "inartful and inaccurate to an extent."

and that the victim suffered physical injury, but it was just because it was a bad accident, criminal negligence, then you could find him guilty of that. But that's only . . . you only reach that if you get to the point where you do not believe that the evidence proves him guilty of assault in the first degree . . . ."

He concluded his discussion with the following: "Thanks for your patience. The court will explain that again to you in a probably much more understandable way than I just have, but I just wanted you to know that . . . there's four counts in that information, but you're going to hear about five different charges, and that's all that means."

General Statutes § 53a-3 (14) provides the following definition for criminal negligence: "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

Given this definition and our review of the remarks within the context in which they were made, we are not persuaded by the state's argument that the characterization provides "a handy shorthand for the layman hearing argument on the issue of criminal negligence." We agree with the defendant that the prosecutor's characterization of the legal concept as a "bad accident" was improper.[6]

---

[6] The defendant also claims that the prosecutor engaged in impropriety when he "told the jurors that sometimes circumstantial evidence doesn't involve a witness' credibility . . . ." The state responds that the prosecutor was simply commenting on the physical evidence of multiple gunshots in various locations over a period of time and reasonable inferences that might be drawn from it on the question of intent. The prosecutor discussed the notion of intent as it related to the crime of attempt to commit murder, a

## II

## DUE PROCESS ANALYSIS

Having identified one instance of prosecutorial impropriety, we now turn to the second step of our two part analysis. The defendant asserts that the claimed impropriety so infected the proceedings with unfairness as to deprive him of a fair trial. We disagree.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [M]oreover . . . [a defendant is not entitled to prevail when] the claimed [impropriety] was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial impropriety] we must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 442, 902 A.2d 636 (2006). "The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 396, 897 A.2d 569 (2006).

As we stated previously, our due process analysis is guided by the *Williams* factors. When considering each of these factors, we conclude that the prosecutor's characterization of criminal negligence as a "bad accident"

charge of which the defendant was found not guilty. In light of the jury's verdict, we need not address this claim.

during closing argument did not deprive the defendant of a fair trial.

Taking the *Williams* factors in order, we conclude that there is nothing in the record to suggest that the remarks were invited. Moreover, the prosecutor's comments referring to criminal negligence as a "bad accident" occurred only twice, both during closing argument.

In determining whether the prosecutorial impropriety was severe, our Supreme Court has stated that it "consider[s] it highly significant that defense counsel failed to object to . . . the improper [remarks], [to] request curative instructions, or [to] move for a mistrial." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 51. "A failure to object demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) Id. In the present case, defense counsel did not object to the improper characterization at trial.

Beyond defense counsel's failure to object, in determining whether the impropriety was severe, we also look to whether the impropriety was blatantly egregious or inexcusable. Id. The prosecutor's characterization of criminal negligence as a "bad accident" was couched within his explanation of the elements of the lesser included offense of assault in the third degree. Immediately following his discussion of the intent required for the lesser included offense, the prosecutor stated that "[t]he court will explain that again to you in a probably much more understandable way than I just have . . . ."[7] As the prosecutor mitigated the impact of

---

[7] The court subsequently charged the jury as to criminal negligence as follows: "Let me define for you criminal negligence. A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur if that such circumstance exists. The risk must be of such nature and degree that the failure to perceive

his statements with his advisement that the court would explain the offense, and because defense counsel did not object to the impropriety at trial, we conclude that it was not severe. See *State* v. *Fauci*, supra, 282 Conn. 52.

Fourth, we consider the centrality of the impropriety to the critical issues in the case. The prosecutor's characterization of criminal negligence as a "bad accident" related to an essential element of the charge of assault in the third degree. It is a well established principle that the elements of a crime are critical issues in a state's case.

Fifth, we look to the curative measures adopted by the court to ameliorate the impropriety. The defendant did not object at trial to the instances of impropriety and did not request a curative instruction. "Given the defendant's failure to object, only instances of grossly egregious [impropriety] will be severe enough to mandate reversal." (Internal quotation marks omitted.) *State* v. *Singleton*, 95 Conn. App. 492, 504, 897 A.2d 636, cert. denied, 279 Conn. 904, 901 A.2d 1228 (2006). Although the court did not give specific curative instructions, and the defendant did not request any, the court reminded the jury in its general instructions prior to trial and again following final argument that the court, not counsel, was the sole source of applicable law.[8] "In

constitutes a gross deviation from the standard of care that a reasonable person would have observed in such a situation."

The court continued: "Now, if you find that the state has proven each of the essential elements of the crime of assault in the third degree, then you would find the defendant guilty of that crime. If you find that the state had not proven it, then you would find the defendant not guilty of that crime. Remember, you only get to that if you find—if you have to go to the lesser included offense on the second count." The defendant did not take exception to the jury charge at trial, nor does he challenge it on appeal.

[8] In its general instructions to the jury, the court stated: "At the conclusion of all the evidence, each party has the opportunity to present oral argument in support of its case. . . . [Y]ou should understand that the arguments of counsel . . . are not evidence in the case. Argument during . . . closing argument is intended to assist you in understanding the evidence and the contentions of the parties to this case.

the absence of a showing that the jury failed or declined to follow the court's [general] instructions, we presume that it heeded them." (Internal quotation marks omitted.) Id., 505.[9]

Finally, the state's case was strong with regard to the charges of which the defendant was ultimately convicted. The prosecutor established a motive for the defendant's violent outburst by producing evidence that Colvin had ejected the defendant from the bar and that Colvin had spat in the defendant's face. The state produced four eyewitnesses to the defendant's multiple discharge of the handgun, as well as the defendant's

"Finally, at the conclusion of all the evidence and the arguments of both sides, I'll instruct you in detail as to the principles of law which you are to apply in your deliberations when you retire to consider your verdict. . . .

"I'd like to discuss with you briefly the different functions that you and I have. My responsibility is to . . . instruct you as to the law which applies to this case."

Immediately following closing arguments, the court charged the jury in relevant part: "It is exclusively the function of the court to state the rules of law that govern the case with instructions on how you are to apply them. It is your obligation to accept the law as I state it. You must follow all of my instructions and not single out some and ignore others. They are all equally important. If by chance you have a different idea of what the law is or should be, you must disregard your notions entirely and apply the law exactly as I give it to you. If the law as I give it to you differs in any way from the claims of the law made by the attorneys, dismiss from your minds what counsel have said to the extent that it differs from what I tell you."

[9] There is no indication in the present case that the jury did not follow the court's general instructions. Rather, it appears that the jurors understood that they were to follow the legal instructions given by the court. The jury found the defendant not guilty of the greater charge of assault in the first degree, demonstrating that it understood the difference between the state of mind required of both offenses. Moreover, the jury submitted two questions to the court during deliberations. In one note, the jurors requested a repeat explanation of intent as it pertained to assault in the first degree. In the second note, they requested to hear the charge of assault in the first degree and the charge of assault in the third degree again. The jury therefore likely not only understood that it was to be instructed on the law by the court but heard a repeated instruction from the court on the element of criminal negligence as it pertained to assault in the third degree during its deliberation.

wife, who heard the gunshots, saw him with a weapon and testified that he fled following the incident, which was indicative of consciousness of guilt. Three of these eyewitnesses, including the victim, were personally acquainted with the defendant. The state also presented four spent .38 caliber bullets that were recovered from the crime scene. Cf. *State* v. *Warholic*, supra, 278 Conn. 397 (state's case weaker when not corroborated by physical evidence).

We conclude that the court's instructions, when viewed in light of the other *Williams* factors, were sufficient to cure any potential harm caused by the prosecutorial impropriety. Accordingly, the defendant was not deprived of his due process right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.