******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MAURICE ROSS
(AC 36406)

Lavine, Prescott and Mihalakos, Js.

*Argued May 22—officially released July 22, 2014*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Maurice Ross, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a), and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that he was deprived of his constitutional right to a fair trial by prosecutorial impropriety. Specifically, the defendant argues that during closing and rebuttal argument, the prosecutor improperly argued facts not in evidence and appealed to the jury's emotions. We agree with the defendant that at least one of the prosecutor's comments was improper, but conclude that any improprieties did not deprive the defendant of a fair trial. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In early February, 2009, the defendant and the victim, Sholanda Joyner, were involved in a romantic relationship. The two had known each other since they were children, and had dated intermittently during the preceding eleven years. The victim's relationship with the defendant was, as the victim's sister described it, "dysfunctional . . . ."

Several days before February 5, 2009, the defendant went to the victim's apartment on Woolsey Street in New Haven and encountered two of her male acquaintances. A physical altercation between the two men and the defendant ensued, and the defendant was forcefully ejected from the victim's apartment. Shortly thereafter, the defendant purchased a revolver for the purpose of killing the two men. The defendant returned to the victim's apartment the next morning and encountered the individuals who had assaulted him the previous day. After displaying the revolver, the defendant took their money, cell phones, and some drugs.

The victim's relationship with the defendant deteriorated further in late January and early February, 2009. At the end of January, 2009, the victim telephoned her father, crying hysterically and complaining that she wanted the defendant removed from her residence. On February 5, 2009, the victim appeared, crying again, at her father's doorstep. Approximately two minutes later, the defendant arrived and demanded that the victim leave with him. Over the protests of the victim's stepmother, the defendant grabbed the victim by the arm and pulled her out the door. Later that evening, at the home of the victim's grandmother, the victim was crying and pleading with the defendant to leave her alone. The defendant again commanded the victim to depart with him, and the two left.

After leaving the house of the victim's grandmother at approximately 11 p.m., the defendant and the victim walked to the victim's apartment. Along the way, the

victim stopped and purchased some ecstasy pills and phencyclidine (PCP). The victim and the defendant smoked the PCP while en route to the victim's apartment. After arriving at the victim's home, the defendant and the victim went into the victim's bedroom, and both of them ingested ecstasy. At some point, the defendant retrieved a revolver and asked the victim if she had "set [him] up . . . ." The defendant then fired one gunshot into her head, intentionally killing her. After moving the victim's body next to the bed, the defendant left the apartment, locking the door behind him, and travelled to Waterbury for several days. While in Waterbury, the defendant socialized at a club named "Club Paradise."

The defendant returned to New Haven on February 8, 2009. Two days later, he encountered Terrence Cornigans outside of a mosque in New Haven. Although the two men were not acquainted, the defendant confessed to Cornigans that he had killed his girlfriend by shooting her, and asked for money so that he could leave the state. Cornigans refused to give the defendant any money, but agreed to drive him home. The defendant instead directed Cornigans to drive him by the victim's apartment on Woolsey Street. Shortly thereafter, Cornigans returned the defendant to the mosque. Later that night, Cornigans reported to the police what the defendant had told him about killing his girlfriend. The police went to the victim's apartment and discovered her body. The defendant turned himself in to the police the following day.

The defendant was arrested and charged with murder in violation of § 53a-54a (a),[1] and carrying a pistol or revolver without a permit in violation of § 29-35 (a). At trial, the defendant testified and admitted that he shot the victim. He claimed, however, that the gun had fired accidentally. The jury found the defendant guilty of both charges. The court subsequently sentenced him to a total effective term of sixty years in prison. This appeal followed.

The defendant claims that he was deprived of his constitutional right to a fair trial because the prosecutor committed numerous acts of impropriety during closing and rebuttal argument. Specifically, the defendant argues that the prosecutor argued facts not in evidence and attempted to appeal to the jury's emotions by (1) mischaracterizing the testimony of the state's firearms expert; (2) comparing the amount of force required to depress the trigger on the defendant's revolver to that required to lift a five pound bag of sugar; (3) mischaracterizing the evidence regarding the defendant's DNA submission on a buccal swab to the police so that it would appear that the defendant did not volunteer to provide the swab; (4) arguing that a verdict of not guilty implied that the victim deserved to die; (5) arguing that the defendant was attempting to place the victim on

trial; (6) characterizing the victim's murder as an "execution"; (7) inappropriately using sarcasm; and (8) making other statements that served no purpose other than to evoke sympathy for the victim.[2] The defendant did not object to any of these claimed improprieties at the times that they occurred.

The state argues that none of the prosecutor's remarks were improper. Alternatively, the state contends that even if any of the prosecutor's comments were improper, they did not, either individually or cumulatively, deprive the defendant of a fair trial.

We conclude that at least some of the prosecutor's remarks during final argument were improper. We further conclude, however, that the prosecutor's improper comments did not deprive the defendant of his right to a fair trial.

I

IMPROPRIETY

The standard of review governing claims of prosecutorial impropriety is well established. "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "[If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 762, 51 A.3d 988 (2012).

"Because the claimed prosecutorial [improprieties] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v.

*Miller*, 128 Conn. App. 528, 535, 16 A.3d 1272, cert. denied, 301 Conn. 924, 22 A.3d 1279 (2011).

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence [on] jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks [for] no conviction through the aid of passion, prejudice, or resentment. If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. [Although] the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Maguire*, 310 Conn. 535, 553–54, 78 A.3d 828 (2013).

Finally, although the defendant failed to object at trial to the remarks that form the basis of his appeal, our Supreme Court has explained that a "defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time. . . . With this maxim in mind, we proceed with our review of the defendant's claim[s]." (Internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 612–13, 65 A.3d 503 (2013).

### A

The defendant first claims that the prosecutor improperly mischaracterized the testimony of the state's firearms expert, James Stephenson, during closing and rebuttal argument. More specifically, the defendant claims that the prosecutor improperly asserted on several occasions that Stephenson had testified that the defendant's revolver would not have fired in the absence of a "purposeful" pull of its trigger. The defendant contends that these assertions were improper

because Stephenson never testified to that effect. The state argues that the prosecutor did not mischaracterize Stephenson's testimony, but instead properly urged the jury to draw from it the reasonable inference that the defendant's gun would not have fired unless its trigger had been deliberately pulled. We agree with the defendant.

The following facts are relevant to our resolution of this claim. In its case-in-chief, the state presented testimony from Stephenson regarding the operation of the defendant's revolver. During the state's direct examination of Stephenson, the following exchange occurred:

"[The Prosecutor]: Talking about the single action again, Mr. Stephenson, with the hammer pulled back, if an individual was holding the gun, and just waving it around, without more, would that cause the gun to fire a bullet?

"[Stephenson]: It requires a force placed upon that trigger to cause it to fire. If the person doesn't have their finger on the trigger, if the gun is—if you were to hold the gun in a fashion where, as explained in single action, if my hand were back here, and I was just waving it around, it's not going to fire. It requires that pressure placed against that trigger to cause it to fire.

"[The Prosecutor]: Is the pressure pulling it backward purposely?

"[Defense Counsel]: Objection, Your Honor. Again, to the characterization purposely or not, that's a conclusion that I think ultimately is going to go to this jury. That's not appropriate.

"[The Court]: Are you claiming it?

"[The Prosecutor]: No, I'll withdraw it."

The prosecutor continued to question Stephenson, but did not raise the question that prompted defense counsel's objection again.

Subsequently, during closing argument, the prosecutor recollected Stephenson's testimony as follows: "The evidence shows, James Stephenson, the ballistics expert, he indicated that [he] and other ballistics experts, who check and recheck each other's work, examined this gun, and he stated, based on years of experience, and examining thousands of guns, this gun does not just go off, as the defendant claimed, it requires a *purposeful* trigger pull of between five pounds and seven and a half pounds." (Emphasis added.) Later, in her rebuttal argument, the prosecutor stated: "Mr. James Stephenson, ballistics expert, he told you, ladies and gentlemen of the jury, the gun is safe, don't worry, that this gun does not just go off. It takes a *purposeful* action, a real pull." (Emphasis added.) The prosecutor further stated: "I know a couple of you indicated on voir dire that you shot guns, you are familiar with guns,

perhaps many of you are not, however; this is, if you will, the smoking gun. If the injury to her head, the conduct leading up to that night, his conduct after, and all of the information that you have is not enough to prove intent to prove murder, then you will know when he fired this gun because, *as Mr. Stephenson eloquently put it*, it takes a *purposeful* pull back, it does not go off. We asked him, if you are shaking the gun around, waving the gun around, even if you have your finger on the trigger, it doesn't go off. No, they tested the gun, there was no malfunction with it. They test fired it at the laboratory. In order for this to discharge a bullet, it takes a *very deliberate purposeful* act." (Emphasis added.)

"In fulfilling his duties, a prosecutor must confine the arguments to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Citation omitted.) *State* v. *Copas*, 252 Conn. 318, 349, 746 A.2d 761 (2000). "[Although] the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Maguire*, supra, 310 Conn. 553–54. "Moreover, when a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury." *State* v. *Singh*, 259 Conn. 693, 718, 793 A.2d 226 (2002).

We agree with the defendant that the prosecutor's comments during closing and rebuttal argument were improper. Our review of the record reveals no instance where Stephenson opined that the defendant's revolver could not have fired without a "purposeful" pull of its trigger. Although the prosecutor attempted to elicit that testimony from Stephenson during direct examination, defense counsel timely objected to the prosecutor's question on the ground that the answer went to the ultimate issue of the defendant's mental state, and the prosecutor withdrew the question without raising it again. Consequently, Stephenson never rendered an opinion on that issue, and the prosecutor's assertions to the contrary constituted unsworn testimony improperly put before the jury.

The state contends that the prosecutor simply urged the jury, on the basis of Stephenson's testimony, to draw a reasonable inference regarding the defendant's mental state. We find this contention unpersuasive. It is true that "a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom"; (internal quotation

marks omitted) *State* v. *Miller*, supra, 128 Conn. App. 535; but the prosecutor's remarks in the present case went beyond merely encouraging the jury to draw an inference. Here, the prosecutor prefaced her repeated assertions regarding the content of Stephenson's testimony with phrases such as, "he stated," "he told you," and "as Mr. Stephenson eloquently put it . . . ." Thus, rather than encourage the jury to draw an inference from Stephenson's testimony, these phrases communicated that the prosecutor was recollecting actual statements made by Stephenson. See *State* v. *Sargent*, 87 Conn. App. 24, 40, 864 A.2d 20 (use of prefatory phrase " 'indicated to you' " conveyed to jury that prosecutor was recollecting actual testimony from witness), cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). Although a prosecutor is free to advance conclusions reasonably supported by the evidence, he or she may not use closing argument to place words in the mouth of a witness that were never spoken. Because we find no factual basis in the record for the prosecutor's comments regarding Stephenson's testimony, we agree with the defendant that those remarks constitute prosecutorial impropriety.

B

With respect to the other challenged remarks made by the prosecutor during closing and rebuttal argument, we conclude that it is not necessary to review each of these statements individually. We reach this conclusion because we agree with the state, for the reasons we will set forth, that even if they were improper, these remarks, and the prosecutor's mischaracterization of Stephenson's testimony, did not either individually or together deprive the defendant of a fair trial. See *State* v. *Baltas*, 311 Conn. 786, 827,      A.3d      (2014) (reaching second step of prosecutorial impropriety analysis by assuming, arguendo, that prosecutor's remarks were improper).

II

DUE PROCESS

The legal principles that guide the second step of our analysis are also well established. "[T]he touchstone of due process analysis in cases of alleged prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [M]oreover . . . [a defendant is not entitled to prevail if] the claimed [impropriety] was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial impropriety] we must view the prosecutor's comments in the context of the entire trial. . . .

The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citation omitted; internal quotation marks omitted.) *State* v. *Gordon*, 104 Conn. App. 69, 81, 931 A.2d 939, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007).

"[O]ur determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial. . . . These factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . . [If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." (Internal quotation marks omitted.) *State* v. *Thompson*, 146 Conn. App. 249, 267–68, 76 A.3d 273, cert. denied, 310 Conn. 956, 81 A.3d 1182 (2013).

We begin by assessing the severity of the claimed improprieties underlying the defendant's claim. Even if we assume, without deciding, that each claimed impropriety occurred in the manner that the defendant describes, we conclude that none of them, considered in light of the whole trial, were particularly egregious. In reaching this conclusion, "we consider it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. Defense counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . Given the defendant's failure to object, only instances of grossly egregious misconduct will be severe enough to mandate reversal." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 479–80, 832 A.2d 626 (2003). Thus, even if we assume that the prosecutor's remarks strayed across the line dividing proper and improper argument, we conclude that the severity of each impropriety was low and unlikely to have prejudiced the defendant.

We next assess the frequency of the claimed prosecutorial improprieties. In the present case, the claimed improprieties were not pervasive throughout the trial,

but were confined to, and constituted only a small portion of, closing and rebuttal argument, a part of the trial "where we typically allow some latitude . . . ." *State* v. *Camacho*, 282 Conn. 328, 383, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). Therefore, we weigh this factor in favor of the state.

Turning next to the strength of the curative measures adopted, we note that the court did not give curative instructions directed specifically to any of the claimed prosecutorial improprieties underlying the defendant's appeal. Nevertheless, "the defendant, by failing to bring them to the attention of the trial court, bears much of the responsibility for the fact that these claimed improprieties went uncured. We emphasize the responsibility of defense counsel, at the very least, to object to perceived prosecutorial improprieties as they occur at trial, and we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument[s] . . . when [they were] made suggests that defense counsel did not believe that [they were] unfair in light of the record of the case at the time. . . . Moreover . . . defense counsel may elect not to object to arguments . . . that he or she deems marginally objectionable for tactical reasons, namely, because he or she does not want to draw the jury's attention to [them] or because he or she wants to later refute that argument . . . . The same principles hold true in regard to requests for special instructions. The failure by the defendant to request specific curative instructions frequently indicates on appellate review that the challenged instruction did not deprive the defendant of a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 597–98, 849 A.2d 626 (2004).

Moreover, although not addressed by specific curative instructions, we conclude that the improper effect of any instances of claimed prosecutorial impropriety raised in this appeal was diminished by the court's general instructions to the jury following closing argument. In those instructions, the court emphasized that arguments made by counsel during the course of the trial were not evidence. See id., 598 ("even though the trial court gave no specific curative instructions, the court reminded the jury in its general instructions, both prior to trial and again following final argument, that 'what the lawyers may have said to you in argument about the facts is not testimony or evidence' "); *State* v. *Mucha*, 137 Conn. App. 173, 201, 47 A.3d 931 ("although the trial court did not give specific instructions directed at the misconduct, we conclude that the court's general instructions, which instructed the jury that arguments by counsel are not evidence, adequately addressed the improper remarks"), cert. denied, 307 Conn. 912, 53 A.3d 998 (2012). Additionally, the court stressed that expressions of personal opinion and

appeals to emotions by counsel were improper, and that the jury was to base its verdict solely on the evidence before it, without regard to its personal biases, prejudices, and sympathies.[3] "In the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 485. Accordingly, we weigh this factor in favor of the state.

We turn next to the strength of the state's case, which we conclude was strong. The defendant testified at trial and admitted to shooting the victim. In doing so, his testimony satisfied the state's burden to prove that he caused the victim's death. Consequently, the only element of the offense of murder remaining in dispute was whether the defendant shot the victim with the intent to cause her death. With respect to that issue, we conclude that the state adduced compelling evidence from which the jury could have found that the defendant intended to kill the victim. Specifically, the state presented evidence that the defendant and the victim were involved in a tumultuous relationship, that the defendant believed the victim had arranged for two of her male acquaintances to assault him, that he purchased a revolver for the purpose of killing these two men, and that immediately before shooting the victim in the head, he asked her, "are you trying to set me up?" Moreover, the state presented evidence that the defendant did not summon help for the victim after shooting her, but instead left the apartment, locked the door behind him, and fled to Waterbury, where he socialized at a nightclub with another individual.

The defendant claims that the state's case was weak because a number of factors suggested the possibility that the shooting was accidental. Specifically, the defendant claims, inter alia, that he was intoxicated on ecstasy and PCP at the time of the shooting, that he had no firearms training, that the revolver was held together by tape, and that the fatal gunshot was not fired at close range. Assuming for purposes of argument the truth of these assertions, we do not believe that any of these facts so significantly weakened the state's case such that the jury was required to disregard the powerful evidence establishing that the defendant acted intentionally when he shot the victim. Moreover, "our Supreme Court has never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Medrano*, 131 Conn. App. 528, 555–56, 27 A.3d 52 (2011), aff'd, 308 Conn. 604, 65 A.3d 503 (2013). Accordingly, because the state's case was both strong and persuasive, we weigh this factor in its favor.

Finally, we conclude that the remaining two *Williams*

factors—the centrality of the improprieties to the critical issues in the case, and the extent to which the claimed improprieties were invited by defense counsel's conduct or argument—weigh in favor of the defendant. The prosecutor's repeated assertions that Stephenson had testified that the defendant's gun would not have fired unless its trigger was pulled purposefully implicated the critical issue of the defendant's mental state at the time of the killing. Moreover, we can identify no conduct or argument by defense counsel during the pendency of the trial that can reasonably be said to have invited any of the improprieties claimed by the defendant.

Nevertheless, in light of the strength of the state's case, the lack of objection to the claimed improprieties identified by the defendant, which were neither pervasive nor severe, and the court's general instructions to the jury, we are not persuaded that "there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the [prosecutor's] improprieties." (Internal quotation marks omitted.) *State* v. *Gordon*, supra, 104 Conn. App. 81. Accordingly, we conclude that the defendant was not deprived of his right to a fair trial by prosecutorial impropriety.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[2] As explained subsequently in this opinion, we limit our analysis of whether the prosecutor's remarks were improper to the first instance of impropriety claimed by the defendant. Even so, for completeness, we briefly describe herein the factual basis and arguments underlying each of the defendant's claims of prosecutorial impropriety.

With respect to the second claimed impropriety, the defendant contends that it was improper for the prosecutor to state during closing argument: "[J]ust think about this: A five pound bag of sugar, we've all bought them, think of the substance of it, the weight of it; that is the least amount it requires for a purposeful pull of that trigger. Guns do not just go off." The defendant argues that this statement was improper because the state's firearms expert, although testifying as to the pounds of pressure needed to pull the revolver's trigger, had not testified that the effort to pull the trigger on the defendant's revolver was similar to that required *to lift* a five pound bag of sugar.

Regarding the third claimed impropriety, the defendant argues that it was improper for the prosecutor to state during rebuttal argument: "[The defendant] went [to the New Haven Police Department], and he didn't give his buccal swabs voluntarily . . . I'm sure they explained to him as part of the procedure, we'll just have to get a search warrant. It's not like he was volunteering." The defendant argues that this remark was improper because it was not based on evidence in the record—namely, the testimony of the detective who interviewed the defendant—but on the prosecutor's personal knowledge of police procedures.

As to the fourth and fifth claimed improprieties, the prosecutor stated during rebuttal argument: "And you know what? Sholanda is not on trial here. Whether she had a drug problem or an eating disorder, Sholanda is not on trial. This young lady, twenty-nine years old, had her life taken away for no reason." The prosecutor later stated: "Whether she had a drug problem, to even get into that sort of revictimizes her. She did nothing to deserve this. She had every right, like any one of us, to live her life."

The prosecutor further stated: "This young lady did not deserve that." The defendant contends that these remarks improperly appealed to the jury's emotions by (1) implying that if the jury found the defendant not guilty, it would be concluding that the victim deserved to die, and (2) placing the victim on trial.

With regard to the sixth claimed impropriety, the defendant argues that in light of evidence indicating that the gunshot was fired from across the room, it was improper for the prosecutor to characterize the victim's death as an "execution" at several points during the state's closing and rebuttal arguments.

The defendant contends that the seventh instance of prosecutorial impropriety occurred when the prosecutor stated, while referring to the defendant's defense: "Now, this gun just magically happens to go off . . . ." The prosecutor further stated: "Oops, the gun just went off. Not, I'm accountable and I'm grieving, oops." The prosecutor also stated: "Oh, yeah, so this gun just happens to go off, and it hits her right here." Finally, the prosecutor stated: "Grief? He didn't care." The defendant argues that these statements constituted an improper use of sarcasm during closing argument.

Finally, as to the eighth claimed impropriety, the defendant argues that the prosecutor made several statements that served no purpose other than to evoke sympathy for the victim. Specifically, the defendant claims that it was improper for the prosecutor to state during closing argument: "[Defense counsel] asked [the fiancé of the victim's father], you didn't call the police? She said no. I wonder how she feels about that now." The defendant claims that it was also improper for the prosecutor to state: "Sholanda's voice has been forever silenced by this man, but listen to her body."

[3] In its charge to the jury, the court stated: "Now, you are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence, and form your own conclusions as to what the ultimate facts are and determine where the truth lies. You may not go outside the evidence introduced in court to find the facts. This means that *you may not resort to guesswork, conjecture or suspicion, and you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.* . . .

"Now, at the conclusion of all the evidence, each attorney has had the opportunity to present a summation to you. Closing arguments are intended to assist you in understanding the evidence and the contentions of the parties in this case. *Arguments by counsel are not evidence.* The law prohibits either the State's Attorney or defense counsel from giving personal opinions as to whether the defendant is guilty or not guilty. It is not their assessment of the evidence that matters, it is only yours. . . .

"Certain things are not evidence, and you may not consider them in deciding what the facts are. These include the following: So, I'm going to give you examples, ladies and gentlemen, of what is not evidence. *Arguments and statements by lawyers. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, it is your memory that controls. It is not proper for attorneys to express their opinions on the ultimate issue in this case or appeal to your emotions.*

\* \* \*

"You should not be concerned in any way with the punishment to be imposed in this case in the event of a conviction. This is a matter exclusively within my function under the limitations and restrictions imposed by statute. You are to find the facts of guilt or nonguilt of the accused uninfluenced by the probable punishment or consequences which follow conviction. *Nor should you be influenced by any sympathy for [the defendant], his family and friends, or for the family and friends of Sholanda Joyner, or any other person who might be in any way affected by your decision.*" (Emphasis added.)

———————————————